I concur as to Parts I, II, and III.
I concur in the result as to Parts IV and V.
I am persuaded that the question of negligence on the part of David Polur, Brenda McCall, and Olympia Spa was properly submitted to a jury under the scintilla-of-evidence rule that governed this wrongful death case, which was filed prior to June 11, 1987.[1] I am concerned about $3,000,000 in punitive damages being assessed against these defendants. Is this excessive punishment? I firmly believe that compensatory damages should be awarded in wrongful death cases. See Tatum v.Schering Corp., 523 So.2d 1042, 1049-63 (Ala. 1988) (Houston, J., dissenting); and, if these damages were to compensate for what the trier of facts could reasonably infer was a horrible death, I would have less concern about the amount of damages in this case; but that is not the law in Alabama. The damages in wrongful death cases are punitive and are intended to punish and deter, Black Belt Wood Co. v. Sessions, 514 So.2d 1249
(Ala. 1987); and such punitive damages cannot be apportioned among joint tort-feasors, Tatum v. Schering Corp., supra (note that Jones and Houston, JJ., dissented on this holding, 1046-49). Polur, McCall, and Olympia Spa have properly challenged the excessiveness of the punitive damages award. I would prefer to remand for the trial court to evaluate the award by the test promulgated by this Court in Green Oil Co. v.Hornsby, 539 So.2d 218 (Ala. 1989):
 " '(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the actual or likely harm is slight, the damages should be *Page 89 
relatively small. If grievous, the damages should be much greater.
 " '(2) The degree of reprehensibility of the defendant's conduct should be considered. The duration of this conduct, the degree of the defendant's awareness of any hazard which his conduct has caused or is likely to cause, and any concealment or "cover-up" of that hazard, and the existence and frequency of similar past conduct should all be relevant in determining this degree of reprehensibility.
 " '(3) If the wrongful conduct was profitable to the defendant, the punitive damages should remove the profit and should be in excess of the profit, so that the defendant recognizes a loss.
 " '(4) The financial position of the defendant would be relevant.
 " '(5) All the costs of litigation should be included, so as to encourage plaintiffs to bring wrongdoers to trial.
 " '(6) If criminal sanctions have been imposed on the defendant for his conduct, this should be taken into account in mitigation of the punitive damages award.
 " '(7) If there have been other civil actions against the same defendant, based on the same conduct, this should be taken into account in mitigation of the punitive damages award.' "
539 So.2d at 223-24 (quoting Aetna Life Ins. Co. v. Lavoie,505 So.2d 1050, 1062 (Ala. 1987) (Houston, J., concurring specially).
Regarding the question of excessiveness of punitive damages in this case, I make the following observations:
(1) From the record, it is obvious that the harm that could occur from the defendants' acts or omissions was great — a painful, horrifying death. If I were to compensate for this, my award would be substantial. Therefore, under item (1) of theGreen Oil Co. test, damages should be substantial.
(2) Though the result was grievous, the defendants' degree of reprehensibility was slight, so slight that the trial court directed a verdict in favor of the defendants on the plaintiff's count alleging wanton misconduct, at the close of the plaintiff's evidence. The plaintiff did not cross-appeal. Therefore, I must assume that in viewing all of the plaintiff's evidence and all reasonable inferences that could have been drawn therefrom in the light most favorable to the plaintiff,there was a complete absence of proof that the defendants consciously did some act, or consciously omitted some duty, under knowledge of existing conditions and with a consciousness that from the doing of the act or omission of such duty an injury would likely or probably result. Caterpillar Tractor Co.v. Ford, 406 So.2d 854, 856 (Ala. 1981); and Hood v. Murray,547 So.2d 75 (Ala. 1989).
Further, I must assume that the reprehensibility of the defendants' conduct was in failing to exercise such care as reasonably prudent persons would have exercised under the same or similar circumstances. There was little, if any, evidence of past problems with the steam room. No one had been burned even slightly, so far as the evidence reveals. The steam room was checked periodically by maintenance personnel and by attendants at the spa. There was no evidence of a cover-up or a concealment of the hazard. Therefore, this would tend to mitigate the amount of punitive damages, for if this were not a wrongful death case, no punitive damages could have been awarded.
There is nothing in the record indicating that the defendants' negligence was profitable to Olympia Spa or to Polur, as the owner. There is certainly nothing to indicate that the negligence would in any way financially benefit Ms. McCall. A modest award of punitive damages would be in excess of any profit that this negligence could have brought to any defendant, and all above a modest amount would be a loss to all of the defendants. Therefore, item (3) of the Green Oil Co.
test to be considered should not enhance the award.
I have no idea of the cost of this litigation. However, I must surmise, from the length of the trial and the number of witnesses that were called and deposed, that item (5) should not enhance the award. *Page 90 
From aught that appears in the record, no criminal sanctions were imposed against any defendant for his, her, or its acts or omissions, so item (6) should not mitigate the amount of the award.
From the record, I must assume that no other civil actions were filed against these defendants for their negligence in failing to maintain and supervise the steam room, or to monitor persons entering the room and the temperature of the steam room, or to warn of the dangers of the steam room. Therefore, item (7) should not mitigate the damages.
The harm that could occur was great; the degree of reprehensibility of the defendants was slight. The other four items that have been addressed would neither enhance nor mitigate the award. This leaves only item (4) to consider: the financial position of the defendants. There is nothing in the record to indicate what effect this judgment will have on these defendants. The award allowed in this case should not be such as would bankrupt these defendants. Bankruptcy, as a result of punitive damages, should be equated with capital punishment and should be the result in only the most egregious cases — cases where the harm that results and that is likely to result from the defendants' conduct is grievous and the defendants' degree of reprehensibility is appalling. In all other cases where punitive damages are warranted — and they are warranted in this case only because this Court refuses to permit the award of compensatory damages — the damages should sting, but they must not extinguish.
What would compensate for the death of Mrs. Johnson? The jury should have been allowed to decide that question, but it was not, because the majority of this Court will not permit compensatory damages for death.
I am convinced that $3,000,000 in punitive damages in this case is excessive if it does more than sting these defendants, but what would compensate for the death of Mrs. Johnson? InTatum v. Schering Corp., at 1050, I expressed my frustration at having to walk the razor's edge in assuring that full compensation will be received for the compensable part of dying and death and in giving primacy to defendants' right to fair punishment under our anomalous civil action for wrongful death. I reluctantly vote to affirm the judgment, rather than to remand for the trial court to ascertain what effect this judgment will have on these defendants. If I am shown, on a motion for rehearing, that this judgment will substantially affect the financial well-being of these defendants, then I will vote to grant the rehearing on the issue of excessiveness. See Wilson v. Dukona Corp., N.V., 547 So.2d 70 (Ala. 1989).
[1] See Ala. Code 1975, § 12-21-12.